[No. 58184-3.   En Banc.   July 9, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD LEWIS CHADDERTON, *Petitioner.*

*Dawn K. Monroe* of *Washington Appellate Defender Association,* for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

GUY, J. — Ronald Chadderton pleaded guilty to, and was convicted of, the first degree manslaughter of a patient under his care at the nursing home where he worked as a nurse's aide. The trial judge imposed an exceptional sentence on the basis of the aggravating factors of abuse of a position of trust and the victim's particular vulnerability. The Court of Appeals affirmed, rejecting Chadderton's argument that the aggravating factors did not justify the exceptional sentence. We hold that when someone recklessly causes the death of a particularly vulnerable person entrusted to his or her care, the factors of abuse of trust and victim vulnerability may properly serve to justify an enhanced sentence for first degree manslaughter. However, because Chadderton's conviction was based on a guilty plea with virtually no development of the facts surrounding the crime, we find the record before us inadequate to enable us to determine whether the aggravating factors are sufficiently substantial and compelling in this case to warrant an exceptional sentence. We therefore reverse and remand for further factual development and resentencing.

## FACTS

On August 11, 1989, Chadderton entered a guilty plea to one count of first degree manslaughter, which is committed when a person "recklessly causes the death of another person". RCW 9A.32.060(1)(a). In his guilty plea, Chadderton stated:

In Snohomish County on or about April 14, 1989, through recklessness, I injured Esther Blake by thrusting her into a chair too roughly. As a result of this her hip was broken contributing proximately to her death on May 21, 1989.

Aside from this statement in the guilty plea, the only other development in the record of the facts underlying this case was provided at sentencing. There, Chadderton's lawyer stated that the accident occurred because Chadderton was feeling overworked and overburdened, and that Chadderton handled Mrs. Blake too roughly out of frustration with his work situation. He also stated that several days elapsed before anyone noticed that Mrs. Blake was injured. Mrs. Blake then had to lie for an extended period in a hospital bed for treatment of her hip, and this immobility led to pneumonia and a blood clot, which were the direct causes of her death a month after the initial injury. Chadderton's lawyer also stated, without contradiction from the prosecution, that the way Chadderton handled Mrs. Blake would not have caused injury to a younger, less fragile person; that but for Mrs. Blake's frailty the injury would not have occurred.

The trial court determined the standard sentence range for Chadderton's offense to be 36 to 48 months. The prosecutor requested a 48-month sentence and expressed the opinion that an exceptional sentence was inappropriate. The trial court imposed an exceptional sentence of 72 months, identifying two bases for doing so. First, the trial court found that "[t]he defendant knew or should have known . . . [that the] victim was particularly vulnerable due to advanced age, disability or ill health. RCW 9.94A.390(2)(b)." Second, the court found that "[t]he defendant abused his position of trust and fiduciary responsibility to facilitate the commission of the offense. RCW 9.94A.390(2)."

### ISSUE

The issue presented is whether a trial court may impose an exceptional sentence on the basis of the victim's particular vulnerability and abuse of a position of trust upon a conviction of first degree manslaughter.

ANALYSIS

I

Victim vulnerability is recognized as an aggravating factor under RCW 9.94A.390(2)(b), which provides that a sentence may be enhanced when "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." Chadderton does not dispute that Mrs. Blake was particularly vulnerable, and he admits that his conduct was reckless insofar as he knew of, yet nonetheless disregarded, Mrs. Blake's frail condition when he thrust her roughly into a chair.[1] He asserts, however, that his conduct was not otherwise reckless; that the same conduct would not have caused injury to, or have been reckless in regard to, a normal healthy adult. Mrs. Blake's particular vulnerability, he argues, was therefore the sole basis for the trial court's determination that he acted recklessly. Chadderton argues that since the trial court relied on Mrs. Blake's vulnerability in establishing one of the elements of the crime, it may not be used a second time to justify an exceptional sentence.

In support of his position, Chadderton relies on *State v. Crutchfield*, 53 Wn. App. 916, 771 P.2d 746 (1989), *limited in State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990). There, the defendant, Grant, had received an exceptional sentence for first degree manslaughter based in part on his inaction during a murder committed by Crutchfield. Grant's inaction, the trial court had found, was due to his reckless preoccupation with his drug business. The Court of Appeals held that Grant's recklessness could not be considered as an aggravating factor because it was "already accounted for in determining the presumptive range for first degree manslaughter". *Crutchfield*, at 925. Similarly, Chadderton argues that his reckless-

---

[1]A person acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation. RCW 9A.08.010(1)(c).

ness in relation to Mrs. Blake was already accounted for in determining the presumptive range for his sentence for manslaughter.

■ We find Chadderton's argument unpersuasive. It is true that the reasons for an exceptional sentence "must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). What this means, however, is that in reviewing the legal adequacy of an aggravating factor "a trial court may not base an exceptional sentence on factors necessarily considered by the Legislature in establishing the standard sentence range." *State v. Grewe*, 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991) (citing *Nordby*, at 518). In other words, an enhanced sentence may not be based on those factors the Legislature necessarily considered in setting the sentence range for the *type* of offense. Nonetheless, the trial court may base an enhanced sentence on other sorts of factors, including those the trial court itself considered in establishing the elements of the *particular* offense.

For example, planning is inherent in the premeditation element of first degree murder and was necessarily considered by the Legislature in establishing the standard sentence range; it therefore may not serve to justify an exceptional sentence for first degree murder. *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987). Similarly, the seriousness of the injuries of a victim of vehicular assault may not be used to justify an exceptional sentence for vehicular assault because infliction of "serious bodily injury" is a prerequisite for the crime and therefore was already considered by the Legislature in setting the presumptive range. *Nordby*, at 519. Likewise, the threatened use of a knife in the commission of first degree rape is an element of the crime and so cannot justify an enhanced sentence. *State v. Falling*, 50 Wn. App. 47, 747 P.2d 1119 (1987).

On the other hand, the vulnerability due to the extreme youth of the victim of statutory rape may properly serve as

an aggravating factor, since even though it is an element of the crime that the victim be under 12 years of age, the Legislature did not necessarily consider extreme youth in setting the presumptive range. *State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990) (statutory rape of 3 year old); RCW 9A.44.073 (rape of a child in the first degree). *Cf. State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987) (exceptional sentence for indecent liberties where victim was 5 years of age). Similarly, the vulnerability of a pedestrian is not inherent in vehicular assault, which may occur against other persons besides pedestrians. RCW 46.61.522. Therefore, pedestrian vulnerability may serve as an aggravating factor for vehicular assault. *Nordby*, 106 Wn.2d at 518. Likewise, the particular vulnerability of foreigners visiting the United States to a robber's illegal demands may be used to justify an enhanced sentence for robbery, *State v. Sly*, 58 Wn. App. 740, 794 P.2d 1316 (1990), and the vulnerability of a stranded motorist may similarly serve as an aggravating factor for the crime of rape, *State v. Altum*, 47 Wn. App. 495, 735 P.2d 1356, *review denied*, 108 Wn.2d 1024 (1987). The principle underlying these cases is that factors inherent in the crime — inherent in the sense that they were necessarily considered by the Legislature and do not distinguish the defendant's behavior from that inherent in all crimes of that type — may not be relied upon to justify an exceptional sentence, whereas factors not inherent in the crime may justify a sentence enhancement even where the trial court relied on them in establishing the elements of the particular crime. *See generally* D. Boerner, *Sentencing in Washington* § 9.6 (1985). We disapprove of *State v. Crutchfield, supra*, to the extent it is inconsistent with this principle.

In the present case, Mrs. Blake's vulnerability is not a factor of the sort the Legislature necessarily considered in setting the standard sentence range for first degree manslaughter. Victim vulnerability is no more inherent in first degree manslaughter than it is in vehicular assault (*Nordby*), robbery (*Sly*), rape (*Stevens* and *Altum*), or indecent liberties

(*Fisher*). Therefore the trial court was not prohibited from relying on Mrs. Blake's particular vulnerability in order to justify Chadderton's exceptional sentence.

## II

Chadderton next argues that the trial court erred in relying on abuse of trust as an aggravating factor. We disagree.

■ Abuse of a position of trust as an aggravating factor is recognized by RCW 9.94A.390(2)(c)(iv), which provides that a sentence for a "major economic offense" may be enhanced when "[t]he defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." By its exact terms RCW 9.94A.390(2)(c)(iv) is limited to abuses of trust in "major economic offenses". Because the list of aggravating factors in RCW 9.94A.390 is merely illustrative and not exclusive, however, "the sentencing judge may rely on this factor in cases involving noneconomic as well as economic offenses." *State v. Fisher*, 108 Wn.2d at 427.

Chadderton argues that although he was in a position of trust in relation to Mrs. Blake, he did not use that position to "facilitate" the commission of the crime, as RCW 9.94A-.390(2)(c)(iv) requires. For authority he again relies on *State v. Crutchfield, supra,* in which the Court of Appeals held that abuse of trust could not be used as an aggravating factor because the defendant's reckless conduct was not done for the purpose of facilitating his offense. *Crutchfield,* at 922-23. Similarly, in *State v. Brown,* 60 Wn. App. 60, 76-77, 802 P.2d 803 (1990), *review denied,* 116 Wn.2d 1025 (1991), the court held that a father did not abuse his position of trust by using excessive force when spanking his 11-year-old child because there was no showing he had used his position to facilitate the crime.

■ The list of aggravating factors in RCW 9.94A.390 "is illustrative only, and is not an exclusive or exhaustive collection of all possible 'substantial and compelling reasons' which may support an exceptional sentence." *State v. Batista,* 116 Wn.2d 777, 784, 808 P.2d 1141 (1991). Therefore the fact that

a defendant's conduct does not precisely fall under the statutory language of RCW 9.94A.390(2)(c)(iv) is not determinative. What is important is whether the conduct was proportionately more culpable than that inherent in the crime.

■ We agree that the literal language of RCW 9.94A-.390(2)(c)(iv) is suited to cases involving a purposeful abuse of trust inasmuch as the statute requires the defendant to have used a position of trust to facilitate the commission of the crime. However, RCW 9.94A.390(2)(c)(iv) does not encompass the full range of situations in which a person might commit an abuse of trust. An "abuse of trust" may occur through recklessness as well as through purposeful design, as where a person acts inconsistently with a standard of care expected of those in a position of trust. *See State v. Dyer*, 61 Wn. App. 685, 811 P.2d 975, *review denied*, 117 Wn.2d 1029 (1991) (upholding exceptional sentence as not clearly excessive where baby-sitter caused death of child by giving her sedatives to make her sleep). Accordingly, we hold that a reckless abuse of trust may properly justify an enhanced sentence regardless of whether the defendant used a position of trust to facilitate the commission of the crime. The reckless abuse of trust may operate as an aggravating factor by analogy to, rather than strictly under, RCW 9.94A.390(2)(c)(iv), which by its literal language applies only to purposeful misconduct. We disapprove of *Crutchfield* and *Brown* to the extent they are inconsistent with this principle.

By the terms of his guilty plea, Chadderton recklessly caused serious and ultimately fatal injuries to Mrs. Blake, a person entrusted to his care due to his position as a nurse's aide. Just as Dyer acted inconsistently with the standard of care expected of one entrusted with the care of children, so here Chadderton acted inconsistently with the trust inherent in the position of a nurse's aide. That Chadderton did not use his position to facilitate the crime is not determinative. Under these circumstances, the trial court did not err

in relying on abuse of trust as a factor justifying Chadderton's enhanced sentence.

### III

■■ Although we find no error in the trial court seeking to justify Chadderton's exceptional sentence by relying on the aggravating factors of victim vulnerability and abuse of trust, this does not end our review. An exceptional sentence will be upheld upon appellate review only if the stated reasons for the sentence enhancement justify it as a matter of law. *State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991). A factor justifies an exceptional sentence as a matter of law only if it is "sufficiently substantial and compelling to distinguish the crime in question from others in the same category." *Grewe*, at 216. In the present case, the paucity of the record before us makes it impossible for us meaningfully to assess whether the factors of abuse of trust and victim vulnerability are substantial and compelling.

The culpability of Chadderton's conduct — and hence the appropriateness of an exceptional sentence — depends on what he actually did to cause Mrs. Blake's hip to break. Unfortunately, the record provides almost no information as to what Chadderton actually did beyond what he stated in his guilty plea. All the record tells us is that Chadderton broke Mrs. Blake's hip by "thrusting her into a chair too roughly". Apparently the broken hip required Mrs. Blake to lie in a hospital bed for an extended period, and this immobility led to the development of blood clots and pneumonia, which directly caused her death approximately 1 month after the hip fracture. It is also significant that no one recognized that Mrs. Blake's hip was broken for several days after Chadderton mistreated her. Given this record, it is possible that Chadderton's conduct, while reckless, was not so egregious as to warrant an exceptional sentence twice the minimum standard sentence range. Mrs. Blake's hip may have broken simply because Chadderton forcefully placed her in her chair, or it may have broken because

Chadderton brutally hurled her into her chair from a distance of several feet. The former would not warrant an exceptional sentence, whereas the latter would. Consequently, we cannot conclude as a matter of law that Mrs. Blake's vulnerability and Chadderton's abuse of his position of trust justify his enhanced sentence. We therefore reverse Chadderton's exceptional sentence.

### CONCLUSION

We hold that when someone recklessly causes the death of a particularly vulnerable person entrusted to his or her care, the factors of abuse of trust and victim vulnerability may properly serve to justify an enhanced sentence for first degree manslaughter. However, statutory aggravating factors should not be relied upon in the abstract but should be firmly grounded in the unique factual circumstances of the individual case. Here, the aggravating factors of victim vulnerability and abuse of trust were relied upon without adequate reference to the underlying facts of the crime.

Because the record contains so little information about the facts surrounding the crime, we cannot determine whether the aggravating factors are sufficiently substantial and compelling to justify Chadderton's enhanced sentence. We therefore reverse the Court of Appeals and remand to the trial court for further factual development and resentencing.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and JOHNSON, JJ., concur.